[Crim. No. 11726. Fourth Dist., Div. One. Mar. 5, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ROY BYE, Defendant and Appellant.

COUNSEL

Joel M. Kriger, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TODD (W. L.), J.*—Defendant had been charged with one count of petty theft with a prior (Pen. Code, §§ 484, 666) and one count of burglary (Pen. Code, § 459).

On March 13, 1980, the criminal proceedings were suspended and a hearing to determine defendant's mental competency pursuant to Penal Code sections 1368 and 1369 was ordered. Ultimately, there was a jury trial on the issue. The defendant called no witnesses. The People called two psychiatrists who testified defendant was not mentally competent to stand trial. Over defendant's objection, the jury was instructed the burden of proof was the "preponderance of the evidence," the standard prescribed in Penal Code section 1369, subdivision (f). The jury found defendant not competent to stand trial and the court ordered defendant committed to Patton State Hospital, where he remains.

Penal Code section 1368 et seq., constitute a comprehensive scheme for dealing with criminal defendants whose mental competency is suspect.

Section 1368 provides the court may order a hearing to establish the mental competence of defendant; when such a hearing has been ordered, the criminal proceedings are suspended.

Section 1369 provides either counsel for the defendant or the prosecution may offer evidence in support of the allegation of mental incompetence.

---

*Assigned by the Chairperson of the Judicial Council.

Section 1369, subdivision (f) provides the defendant is presumed competent unless he is proved mentally incompetent by a "preponderance of the evidence."

If the issue is tried to a jury, section 1369, subdivision (f) requires the verdict be unanimous.

Section 1370 provides if the defendant is found to be mentally competent, the criminal process resumes. If the defendant is found to be mentally incompetent, the criminal process is suspended until he becomes mentally competent. In the meantime, the defendant shall be committed to a state hospital or other treatment facility or shall be ordered to undergo outpatient treatment. If the defendant is charged with certain crimes enumerated in section 1370, he must be confined in a mental health facility for a minimum of 90 days before he may be released on outpatient treatment. (*Id.*)

Section 1370 further provides that within 90 days of a commitment, the superintendent of the treatment facility shall report to the court concerning the defendant's progress toward recovery of his mental competence. If the defendant has not regained his competence, but there is a substantial likelihood that he will in the foreseeable future, the defendant is to remain in the treatment facility. Subsequent reports are submitted at six-month intervals, with another section 1369 hearing after eighteen months, if the defendant is still hospitalized. (*Id.*)

The maximum period of commitment under this scheme is three years or the maximum sentence provided for by law for the most serious offense with which the defendant is charged, whichever is shorter. (*Id.*)

At the end of that period, or whenever the superintendent reports there is no substantial likelihood the defendant will regain his competence in the foreseeable future, the defendant is to be returned to the court. If it "appears to the court" that the defendant is "gravely disabled" as defined in the Lanterman-Petris-Short (LPS Act) Act (Welf. & Inst. Code, § 5000 et seq.) conservatorship proceedings shall be commenced. (*Id.*)

These conservatorships are for one year and are renewable on a showing that the person remains "gravely disabled." (Welf. & Inst. Code, § 5361.)

Finally, continuing incompetence for purposes of section 5008, subdivision (h)(2) may be established by a preponderance of the evidence *Conservatorship of Hofferber* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836].

The statutory scheme set out above can serve two purposes. In its usual application, the defendant seeks to avoid the penal consequences of a criminal conviction by establishing his incompetency. As an incompetent, he cannot be tried and convicted. The procedures seem reasonably calculated to protect mentally disordered defendants from the unfair burden of defending a criminal charge when they are unable to understand the charges against them or to assist counsel in their defense. The burden of proof established by the statute (a preponderance of the evidence) is necessary to overcome the presumption of competency.

But the application of section 1368 et seq., is not restricted to incompetency claims pressed by the defense. Section 1369 provides if the defense declines to present evidence in support of the allegation of mental incompetence, the prosecution may do so. As the outline of the statutory provisions above makes clear, a determination of mental incompetency can lead to commitment in a state institution for up to three years followed by an LPS Act conservatorship of indefinite duration.

The defendant attacks this procedure as unconstitutional under the due process clause of the California Constitution (art. I, § 7, subd.(a)) and the due process clause of the Fourteenth Amendment to the United States Constitution. These are issues of first impression in California.

■ Defendant first argues the section 1369 hearing should be considered a criminal proceeding involving the "beyond a reasonable doubt" standard of *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]. He contends the case arose under the Penal Code, the jury "necessarily" had to determine defendant did the act with which he was charged, and the decision to commit leaves the stigma he was committed to a mental institution for the commission of a criminal act. Defendant seeks to strengthen the analogy to criminal proceedings by noting if he recovers his competency and is convicted of the charged offense, his sentence must be reduced by crediting him with time spent in the state hospital (Pen. Code, § 1375.5).

Finally, his period of commitment as an incompetent may not exceed the maximum sentence provided for the offense charged (Pen. Code, § 1370 subd. (c)(1)). Therefore, the proceeding is criminal in nature and due process requires proof beyond a reasonable doubt, argues defendant.

*People* v. *Fields* (1965) 62 Cal.2d 538 [42 Cal.Rptr. 833, 399 P.2d 369, 16 A.L.R.3d 708], specifically holds section 1368 proceedings are not criminal in nature. "In a proceeding under section 1368 a defendant is not charged with a criminal act and is not subject to criminal proceedings ... if he is found insane." (*Id.* at p. 540.)

We find no basis to support defendant's contention that the jury will necessarily have to pass upon the guilt of defendant in the proceeding. Nor does it necessarily follow that commitment of the incompetent will stigmatize him as having committed a crime. The state's beneficence in reducing a prisoner's sentence by the period which he spent before conviction in a treatment facility hardly stamps the latter as penal in nature. Clearly defendant's situation is distinguishable from a conventional criminal proceeding contemplated by the U.S. Supreme Court in *In re Winship, supra*, 397 U.S. 358, and that opinion is not controlling.

In *Addington* v. *Texas* (1979) 441 U.S. 418 [60 L.Ed.2d 323, 99 S.Ct. 1804], the United States Supreme Court held a "'clear and convincing' standard of proof is required by the Fourteenth Amendment in a civil proceeding under state law to commit an individual involuntarily for an indefinite period to a state mental hospital." The court rejected the suggestion the Constitution mandated the criminal law standard of proof (*id.* at p. 431 [60 L.Ed.2d at p. 334]). Does this holding render the "preponderance of the evidence" standard constitutionally defective in the instant case? The following factors need be compared: (1) in a section 1368 proceeding, just as in an ordinary civil commitment proceeding, the subject faces a substantial and possibly lengthy loss of liberty; (2) both determinations carry the stigma of a formal judgment of mental instability; (3) in both proceedings, the state's purposes are benevolent—to treat the subject and assist him to function normally, if possible; (4) the purpose of the inquiry in each instance is different. In the civil commitment case, the issue is whether the subject is ill and dangerous. In the section 1368 proceeding, the issue is whether the subject can function well enough to understand the criminal charge and assist in his own defense.

In California, *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], determined proof beyond a reasonable doubt was required before a conservator could be appointed under the LPS Act's grave disability provisions (Welf. & Inst. Code, § 5350 et seq.) with the power to involuntarily commit a conservatee to a state mental institution for up to a year. As in *Addington*, the California Supreme Court listed the prison-like physical restraint, the irrelevancy of the state's benevolent purpose in confining and the stigma associated with appointment of a conservator with confinement authority, as strong factors requiring the higher standard of proof, thus assuring due process.

In *People* v. *Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352], the California Supreme Court held the due process clause of the California Constitution (art. I, § 7, subd. (a)), and the Fourteenth Amendment to the United States Constitution required the "beyond a reasonable doubt" standard be applied in MDSO proceedings whenever a subject is committed or recommitted to the State Department of Health as an MDSO. In *People* v. *Thomas* (1977) 19 Cal.3d 630 [139 Cal.Rptr. 594, 566 P.2d 228], the California Supreme Court extended the *Burnick* standard to narcotics addict commitment proceedings.

■ Defendant contends these California precedents require the same "beyond a reasonable doubt" standard of proof in the section 1368 proceeding, based upon stigma and loss of liberty.

Two cases cited by respondent, *People* v. *Superior Court* (*Campbell*) (1975) 51 Cal.App.3d 459 [124 Cal.Rptr. 158], and *People* v. *Campbell* (1976) 63 Cal.App.3d 599 [133 Cal.Rptr. 815], refer to the "preponderance of the evidence" standard but do not address defendant's contention herein. *Conservatorship of Hofferber, supra,* 28 Cal.3d 161, 178-180, deals with this issue. In that case, while holding Hofferber's alleged "grave disability" for LPS Act purposes must be established beyond a reasonable doubt, the court also held Hofferber's "continuing incompetence" was properly established by the lesser "preponderance of the evidence" standard. Our Supreme Court, at page 179, states: "So long as a defendant is adjudged incompetent by a preponderance of evidence, the criminal trial and disposition of the charged offenses are impossible. (Pen. Code, §§ 1369, 1370.) It is the preponderant judgment of incompetence that removes defendant from the criminal justice system and creates the need for nonpenal protection against his continuing dangerousness . . . .

"... No purpose seems served by requiring a more stringent proof of the underlying condition in order to establish an LPS Act conservatorship."

It is clear, then, that no subject, having been found incompetent in a section 1368 proceeding, will be committed, under the LPS Act, to one or more one-year conservatorship terms without his "grave disability" being determined beyond a reasonable doubt. In other words, unless the subject is proved to fit the categories set forth in Welfare and Institutions Code sections 5008, subdivision (h)(1) or 5008, subdivision (h)(2),[1] beyond a reasonable doubt, he cannot be subjected to long-term conservatorship proceedings as a result of the initial section 1368 finding of incompetence.

Turning back to the initial section 1368 proceeding, are its immediate consequences such as to require the more stringent standard of proof in order to insure due process?

The purpose of the proceeding is different from those compared above in that protection of society in general is not a consideration for the section 1368 inquiry. The law seeks *only to protect* the accused. It is unfair to subject any defendant to criminal prosecution when he cannot understand the nature of the charges pressed against him or cannot assist in his own defense. Even when a defendant resists this protection by opposing the evidence of incompetency, it would be unfair to deny him the benefit of treatment for his condition before subjecting him to a potential loss of life or liberty in the criminal proceeding.

Once incompetency is established, the statutory scheme is replete with mandatory reviews to insure a subject will not be warehoused

---

[1] For purposes of article 1 (commencing with § 5150), article 2 (commencing with § 5200), and article 4 (commencing with § 5250) of chapter 2 of this part, and for the purposes of chapter 3 (commencing with § 5350) of this part, "gravely disabled" means:

(1) A condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter; or

(2) A condition in which a person, has been found mentally incompetent under Section 1370 of the Penal Code and all of the following facts exist:

(i) The indictment or information pending against the defendant at the time of commitment charges a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person.

(ii) The indictment or information has not been dismissed.

(iii) As a result of mental disorder, the person is unable to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner.

unduly in a mental institution. He may not even leave the local community if outpatient therapy is deemed sufficient (Pen. Code, § 1370). Whether hospitalized or not, his progress toward competence *must be* reported to the court within 90 days (Pen. Code, § 1370, subd. (b)(1)). Reports must be submitted at six-month intervals and another section 1369 hearing must be held eighteen months after the initial hearing (Pen. Code, § 1370, subds. (b)(1) and (2)). In no event can any defendant be committed longer than three years under this statutory scheme and where the maximum lawful term of incarceration for the original offense charged is less than three years, such time period becomes the maximum period of confinement under this procedure (Pen. Code, § 1370, subd. (c)(1)). Such limits are in great contrast to the indefinite involuntary commitment addressed in *Addington*, the year-long conservatorship terms under the LPS Act in *Roulet*, or the indeterminate period under the MDSO procedure.

Since the section 1368 proceeding is designed *only* to protect the accused, the procedure should be designed to afford this protection when needed. As stated in *Addington v. Texas, supra*, 441 U.S. 418, "In a civil commitment state power is not exercised in a punitive sense." Hence the traditional criminal law standard is not required. The "concern that the risk of error to the individual must be minimized even at the risk that some who are guilty might go free" (*Addington v. Texas, supra*, at p. 428 [60 L.Ed.2d at p. 332]) does not pertain in the section 1368 context. Society's greater concern under section 1368 is that *no defendant* shall ever be convicted of a criminal charge when he was incapable of understanding or assisting during the trial of his alleged guilt.

A more stringent standard of proof would decrease the likelihood that an incompetent or accused would receive the benefit of the section 1368 procedure. "Whether the individual is mentally ill . . . and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists." (*Addington, supra*, at p. 429 [60 L.Ed.2d at p. 429].) The lack of certainty and the fallability of psychiatric diagnosis would seriously hamper the attempt to prove mental incompetence. In the medical discipline the modern standard for fact finding is a "reasonable medical certainty" (*Addington, supra*, p. 430 [60 L.Ed.2d at p. 333]). To require a judge or lay juror to apply expert opinion so phrased to the criminal standard of proof could result in a failure to find incompetence for an accused who was truly without understanding of his predicament. His victory in the competency trial

would become hollow upon conviction of the criminal charge in a trial conducted without his mental presence.

In the best of all worlds the state would be required to prove criminal "guilt beyond all doubt. However, 'due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.' [Citation.] Nor should the state be required to employ a standard of proof that may completely undercut . . . the legitimate interests of both the state and the patient that are served by civil commitments." (*Addington, supra*, p. 430 [60 L.Ed.2d at p. 334].) Chief Justice Burger's words apply with even greater force to the issue before this court.

Having considered the scope of the section 1368 procedure, having contrasted it with the more stringent potential results of the LPS Act (involuntary civil commitment) and MDSO procedures, and having recognized the significant difference in purpose between the section 1368 procedure and those procedures compared, we hold appellant has been afforded due process of law under both article I, section 7, subdivision (a) of the California Constitution and the Fourteenth Amendment to the United States Constitution. The statutory "preponderance of the evidence" standard of section 1369, subdivision (f) is approved.

Brown (Gerald), P. J., and Work, J., concurred.