Opinion
 

 MOSK, J.
 

 We granted review to resolve an important issue under the law that governs inquiry into the mental competence of a defendant in a criminal prosecution.
 

 For a trial of a defendant’s mental competence, Penal Code section 1369 establishes a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise. In so doing, it operates to impose the burden of proof on the party, if any, who claims that the defendant is mentally incompetent, and fixes the weight thereof at preponderance of the evidence.
 

 The question that we shall address is whether Penal Code section 1372 does the same for a hearing on a defendant’s recovery of mental competence. The answer that we shall give is affirmative.
 

 I
 

 On September 29, 1995, as the evidence admitted at his subsequent trial in this action would establish, Juancho Lopez Rells, who had a history of major mental illness, parked his automobile in a lot at the Lakewood Center Mall in the City of Lakewood in Los Angeles County. He entered the J.C. Penney Company department store, having in his possession blank checks for a personal checking account at Wells Fargo Bank that had been closed more than eight months earlier. Over the next hour, while on the premises, he would conduct himself appropriately and in a manner that was generally calm and relaxed but at times somewhat fidgety. Proceeding to the jewelry department, he selected a watch priced at over $600 from among a number shown to him by Sandra Estrada, a saleswoman. To make the purchase, he handed her a completed check. Calling the security office, Estrada sought approval. Attempting verification, David Thome, a security agent, received information that Rells’s account was not current, and passed it along to Estrada. Estrada said that there was a problem with the check; Rells responded with disbelief, blaming his—nonexistent—wife for the situation. Thome came to the jewelry department. Attempting verification for a second
 
 *863
 
 time, he again received the same information. Returning to his office, and attempting verification for a third time, he apparently yet again received the same information. He then notified, among others, die Los Angeles County Sheriff’s Department. Going back to the -jewelry department, he asked whether Rells would accompany him to a package pickup area where, he said, he would try to provide assistance, and Rells replied affirmatively. About halfway to their destination, Thome turned, and saw Rells walking away from him at a moderate pace, neither fast nor slow, toward an exit. Rells left the store. Thome followed. By now, sheriff’s deputies had arrived at the scene in a marked patrol vehicle. Rells entered his automobile and started its engine. Thome pointed him out. The deputies approached with lights on and siren blaring. Refusing to stop, Rells fled onto and over city streets at high speed, swerving across lanes, bouncing off curbs, and running red lights. The deputies pursued. Entering an intersection at over 70 miles per hour, Rells smashed into a vehicle carrying Linda Nhieu, Kevin Nhieu, her husband, and Brian Nhieu, their two-year-old son, and in so doing killed all three. He was then arrested.
 

 On behalf of the People of the State of California, the District Attorney of the County of Los Angeles presented an information to the superior court thereof, charging Rells with the murder (Pen. Code, § 187, subd. (a)) of Linda, Kevin, and Brian Nhieu, and the burglary
 
 (id.,
 
 § 459) of the J.C. Penney Company. Rells entered pleas of not guilty and not guilty by reason of insanity.
 

 The superior court issued an order for a trial of Rells’s mental competence pursuant to Penal Code section 1369, and thereby effectively suspended all proceedings in the criminal prosecution until the question should be determined. It had appointed four psychiatrists to subject him to examination. Trial was to the court after the People and Rells each waived a jury. Rells introduced evidence, and argued, in favor of mental incompetence, through the opinion of apparently three of the four psychiatrists, and the People introduced evidence, and argued, to the contrary, through the opinion of apparently only one. Effectively referring to the presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise, the court found Rells mentally incompetent. It suspended all the proceedings in the criminal prosecution until he should become mentally competent. It committed him to Patton State Hospital for evaluation and treatment. Subsequently, pursuant to Penal Code section 1372, the hospital’s acting medical director, having determined that Rells had regained mental competence, filed a certificate of restoration thereto. At a hearing pursuant to the same provision, Rells and the People submitted the question on the certificate of restoration to mental competence itself and also
 
 *864
 
 on an accompanying report. Without referring to any presumption bearing on a defendant’s mental competence, the court found Rells to have recovered mental competence. It thereupon reinstated the proceedings in the criminal prosecution.
 

 Trial as to guilt or innocence and sanity or insanity was to the superior court after the People and Rells each waived a jury. As to guilt or innocence, the People presented evidence and Rells did not. The court found him guilty of the murder of Linda, Kevin, and Brian Nhieu, in the first degree, based on a theory of felony-murder burglary, and also found him guilty of the burglary of the J.C. Penney Company in the second degree. As to sanity or insanity, both Rells and the People presented evidence, Rells calling three psychiatrists who opined that he was, or may have been, insane, and the People calling one psychiatrist who opined that he was not. The court found him sane.
 

 The superior court rendered judgment against Rells accordingly. It sentenced him to three terms of imprisonment for 25 years to life, one each for the first degree murder of Linda, Kevin, and Brian Nhieu, each of which it effectively ordered to run concurrent to each of the others; it also sentenced him to a single, lower, term of imprisonment for 16 months for the second degree burglary of the J.C. Penney Company, which it ordered stayed temporarily pending completion of the other terms and permanently thereafter; it thereby sentenced him to a total term of imprisonment for 25 years to life.
 

 After Rells filed a notice of appeal in the superior court, an appeal was docketed in the Court of Appeal for the Second Appellate District, and was later assigned to Division Three thereof.
 

 Several years prior to the occurrence of the events that gave rise to this action, Division Seven of the Court of Appeal for the Second Appellate District had handed down its decision in
 
 People v. Mixon
 
 (1990) 225 Cal.App.3d 1471 [275 Cal.Rptr. 817] (hereafter sometimes
 
 Mixon).
 
 With one member dissenting on the point, a majority held to this effect: For a hearing on a defendant’s recovery of mental competence, Penal Code section 1372 establishes a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise. (See
 
 People v. Mixon, supra,
 
 225 Cal.App.3d at pp. 1475, 1478-1485; but see
 
 id.
 
 at pp. 1490-1497 (conc. & dis. opn. of Johnson, J.).) In so doing, it operates to impose the burden of proof on the party, if any, who claims that the defendant is mentally incompetent, and fixes the weight thereof at preponderance of the evidence. (See
 
 id.
 
 at pp. 1475, 1478-1485; but see
 
 id.
 
 at pp. 1490-1497 (conc. & dis. opn. of Johnson, J.).)
 

 
 *865
 
 On appeal, Rells claimed, inter alia, that the superior court erred in its conduct of the hearing on his recovery of mental competence under Penal Code section 1372. He argued that the court had presumably conducted the hearing in conformity with the holding of the
 
 Mixon
 
 majority, including imposing on him the burden of proof of his own mental incompetence, and that the holding was erroneous.
 

 By a judgment announced in a unanimous decision not certified for publication, the Court of Appeal affirmed the judgment of the superior court after modifying it in part not pertinent here. Concluding, evidently on independent review, that the holding of the
 
 Mixon
 
 majority was sound, the Court of Appeal rejected Rells’s claim.
 

 Rells filed a petition for review. We granted his application. By specification, we limited the question on review, in substance, to the proper conduct of a hearing on a defendant’s recovery of mental competence under Penal Code section 1372, including, impliedly, any presumption bearing on mental competence and, expressly, any burden of proof related thereto.
 

 II
 

 The law that governs inquiry into the mental competence of a defendant in a criminal prosecution consists of a statutory scheme that is codified in chapter 6 of title 10 of part 2 of the Penal Code, commencing with section 1367 thereof. Among the provisions applicable to this cause are the following:
 

 Penal Code section 1367 declares, in pertinent part, that a defendant “cannot be tried or adjudged to punishment while” he “is mentally incompetent,” that is to say, while, “as a result of mental disorder or development disability,” he is “unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.” (Pen. Code, § 1367, subd. (a).)
 

 Penal Code section 1368 provides, inter alia, that, “[i]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he . . . shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . .” (Pen. Code, § 1368, subd. (a).) “If counsel informs the court that he . . . believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant’s mental competence is to be determined” at a trial, as subsequently specified.
 
 (Id.,
 
 § 1368, subd. (b).) But, even “[i]f
 
 *866
 
 counsel informs the court that he . . . believes the defendant is mentally competent, the court may nevertheless order” such a trial.
 
 {Ibid.)
 
 Generally, “when an order” of this sort “has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the . . . mental competence of the defendant has been determined.”
 
 (Id.,
 
 § 1368, subd. (c).)
 

 Penal Code section 1369 sets forth the procedures for the trial in which the question of the mental competence of the defendant is to be determined. It provides that such a trial may be “by court or jury” (Pen. Code, § 1369), and that, if by jury, it must be decided by unanimous verdict
 
 (id.,
 
 § 1369, subd. (f)). It also provides for the appointment by the court of one or more experts to examine the defendant
 
 (id.,
 
 § 1369, subd. (a)), the introduction of evidence by the defendant and the People
 
 (id.,
 
 § 1369, subds. (b), (c) & (d)), and the presentation of argument by each thereafter
 
 (id.,
 
 § 1369, subd. (e)). It states that “[i]t shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent.”
 
 (Id.,
 
 § 1369, subd. (f).)
 

 Penal Code section 1370 provides that, “[i]f the defendant is found mentally competent,” the criminal prosecution “shall resume.” (Pen. Code, § 1370, subd. (a)(1)(A).) But, “[i]f the defendant is found mentally incompetent,” the criminal prosecution “shall” remain “suspended until” he “becomes mentally competent.”
 
 (Id.,
 
 § 1370, subd. (a)(1)(B).) “In the meantime, the court shall order ... the mentally incompetent defendant” to be committed as specified, including to a state hospital, for evaluation and treatment. (I
 
 d.,
 
 § 1370, subd. (a)(1)(B)(i).) At specified intervals after such commitment, a specified mental health official, including the medical director of a state hospital, “shall make a written report to the court,” among others, “concerning the defendant’s progress toward recovery of mental competence.”
 
 (Id.,
 
 § 1370, subd. (b)(1).) If the defendant has been committed for 18 months and remains so, he “shall be returned to . . . court.”
 
 (Id.,
 
 § 1370, subd. (b)(2).) Once there, the court must hold a retrial of the defendant’s mental competence “pursuant to the procedures set forth in” Penal Code section 1369
 
 (id.,
 
 § 1370, subd. (b)(2)), which include the presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise.
 

 Penal Code section 1372 provides that, “[i]f ’ the specified mental health official “determines that the defendant has regained mental competence,” he “shall . . . fil[e] a certificate of restoration” thereto. (Pen. Code, § 1372, subd. (a)(1).) It also provides that the defendant must then be “returned to . . . court” “for further proceedings.”
 
 (Id.,
 
 § 1372, subd. (a)(2).) It further provides that the “court shall notify” one of certain specified mental health
 
 *867
 
 officials, “as appropriate, of the date of any hearing on the defendant’s [mental] competence and whether or not the defendant was found by the court to have recovered [mental] competence.”
 
 (Id.,
 
 § 1372, subd. (c).) It does not, however, set forth procedures for a hearing on the defendant’s recovery of mental competence identical to those for a trial of his mental competence in the first place. Indeed, it does not set forth any such procedures whatsoever.
 

 Thus, for a trial of a defendant’s mental competence, Penal Code section 1369 establishes, expressly, a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise. In so doing, it operates to impose the burden of proof on the party, if any, who claims that the defendant is mentally incompetent— usually, the defendant himself (see Pen. Code, § 1369, subd. (b)(1)),
 
 [1]
 
 but sometimes the People (see Pen. Code, § 1369, subds. (a) & (b)(2))
 
 [2]
 
 —and fixes the weight of the burden of proof at preponderance of the evidence.
 

 But, for a hearing on a defendant’s recovery of mental competence, Penal Code section 1372, unlike Penal Code section 1369, does not establish, expressly, a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise. We believe, however, that it does so impliedly. The presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise is applicable at a trial of the defendant’s mental competence,
 
 in spite of the fact that it may run counter to any doubt expressed by the court and supported by the opinion of his own counsel.
 
 This presumption is applicable as well at a retrial of the defendant’s mental competence, which is mandatory when the defendant has been committed for 18 months and remains so without a certificate of restoration to mental competence filed by a specified mental health official,
 
 in spite of the fact that it is inconsistent with his apparent
 
 non
 
 recovery of mental competence.
 
 Therefore, in our view, this presumption should be understood to be applicable at a hearing on the defendant’s recovery of mental competence,
 
 where it conforms in fact with the certificate of restoration filed by the specified mental health official.
 
 As stated, whereas Penal Code section 1369 sets forth procedures for a trial of a defendant’s mental competence, Penal Code section
 
 *868
 
 1372 does not do so for a hearing on the defendant’s recovery of mental competence. With respect at least to the presumption in question, Penal Code section 1372 allows its gap to be filled by Penal Code section 1369.
 

 In accord with our conclusion is that of the
 
 Mixon
 
 majority. Their reasoning is largely consistent with ours, and calls for no further comment here.
 

 Contrary to our conclusion is that of the
 
 Mixon
 
 dissenter. His reasoning, however, fails to persuade. He maintains that, when a defendant has been found to be mentally incompetent after a trial of his mental competence, he should be presumed to continue to be so at a subsequent hearing on his recovery thereof. Perhaps, if circumstances had not changed. But they have, as a matter of necessity. To trigger a hearing on a defendant’s recovery of mental competence, a specified mental health official must have filed a certificate of restoration thereto. Contrary to the implication of the
 
 Mixon
 
 dissenter, in this regard the official is not an expert witness and the certificate is not testimonial opinion. The official’s filing of the certificate has legal force and effect in and of itself. It causes the defendant to be returned to court for further proceedings. It does so separately and independently of any role that either official or certificate may subsequently play. At such a hearing, as we have concluded, there is a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise—a presumption that, in terms, affects the burden of proof (see Evid. Code, § 605), which it imposes on the party, if any, who claims that the defendant is mentally incompetent (see
 
 id.,
 
 § 606). The
 
 Mixon
 
 dissenter also maintains that general principles of law, as reflected in, among other things, Evidence Code section 500,
 
 [3]
 
 advise in favor of imposing the burden of proof at a hearing on a defendant’s recovery of mental competence on the People, and that the law of other jurisdictions is in accord. But the specific statutory scheme with which we are here concerned, which comprises the law of
 
 this
 
 jurisdiction, simply does not impose any burden of proof on any party as such. Rather, as we have concluded, it establishes a presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise, and thereby operates to impose the burden of proof on the party, if any, who claims that he is mentally incompetent.
 
 [4]
 

 
 *869
 
 Arguing against our conclusion, Rells relies, in part, on the reasoning of the
 
 Mixon
 
 dissenter. We have found that reasoning, however, to be unpersuasive.
 

 Rells relies, in other part, on certain “rules of construction.”
 
 (People v. Anderson
 
 (1987) 43 Cal.3d 1104, 1139 [240 Cal.Rptr. 585, 742 P.2d 1306].) One such “rule” is that a statutory scheme like the one before us “should be construed to avoid serious constitutional questions,” here, he asserts, under the due process clause of the Fourteenth Amendment to the United States Constitution.
 
 (People v. Anderson, supra,
 
 43 Cal.3d at p. 1139.) Another such “rule” is that a “‘defendant is entitled to the benefit of every reasonable doubt’ ” as to the meaning of such a scheme.
 
 (Id.
 
 at pp. 1139, 1145.)
 

 The “rule” entitling a defendant to the benefit of a reasonable doubt about the meaning of a statutory scheme does not aid Rells.
 
 (People
 
 v.
 
 Anderson, supra,
 
 43 Cal.3d at p. 1139.) For a doubt to be “reasonable” for present purposes it must be “realistic.”
 
 (Id.
 
 at p. 1145.) We have no such doubt about the applicability, at a hearing on a defendant’s recovery of mental competence, of the presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise.
 

 Neither does the “rule” about avoiding serious constitutional questions aid Rells.
 
 (People
 
 v.
 
 Anderson, supra,
 
 43 Cal.3d at p. 1139.) By its own terms, it operates only when any such “constitutional questions” are “serious”
 
 (ibid.)
 
 in the sense of “grave and doubtful”
 
 (id.
 
 at p. 1146, italics omitted), Here, notwithstanding Rells’s assertion, no “constitutional questions” of this sort are raised under the Fourteenth Amendment’s due process clause.
 
 (People v. Anderson, supra,
 
 43 Cal.3d at p. 1139.) The reason is this: The Fourteenth Amendment’s due process clause in fact permits the presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise.
 
 (Cooper v. Oklahoma
 
 (1996) 517 U.S. 348, 355 [116 S.Ct. 1373, 1377, 134 L.Ed.2d 498];
 
 Medina
 
 v.
 
 California
 
 (1992) 505 U.S. 437, 442-453 [112 S.Ct. 2572, 2575-2582, 120 L.Ed.2d 353].) That is certainly true of a trial of a defendant’s mental competence, at which the presumption unobjectionably “affect[s] [mental]
 
 *870
 
 competency determinations only in a narrow class of cases where the evidence is in equipoise . . .
 
 (Medina
 
 v.
 
 California, supra,
 
 505 U.S. at p. 449 [112 S.Ct. at p. 2579]; see
 
 id.
 
 at pp. 452-453 [112 S.Ct. at pp. 2580-2582]; see also
 
 Cooper v. Oklahoma, supra,
 
 517 U.S. at p. 363 [116 S.Ct. at p. 1381].) That is also true, to our mind, of a hearing on a defendant’s recovery of mental competence, at which the presumption has the same effect. The fact that a hearing presupposes an earlier finding by the court or a jury of mental incompetence is balanced by the fact that the hearing itself is triggered by the later filing by a specified mental health official of a certificate of restoration to mental competence. (Cf.
 
 Cooper v. Oklahoma, supra,
 
 517 U.S. at p. 365 [116 S.Ct. at p. 1382] [presuming that “it is unusual for even the most artful malingerer to feign [mental] incompetence successfully for a period of time while under professional care”].) Although we recognize that a presumption that fixes the weight of the burden of proof, at a trial, at clear and convincing evidence is violative of the Fourteenth Amendment’s due process clause
 
 (Cooper v. Oklahoma, supra,
 
 517 U.S. at pp. 354-369 [116 S.Ct. at pp. 1376-1384]), we do not believe that a presumption that fixes the burden’s weight, at a hearing, at preponderance of the evidence is similar. A different presumption may prove “more favorable” to a defendant.
 
 (Medina v. California, supra,
 
 505 U.S. at p. 451 [112 S.Ct. at p. 2580].) But it is not required by the Fourteenth Amendment’s due process clause for that reason.
 
 (Medina
 
 v.
 
 California, supra,
 
 505 U.S. at p. 451 [112 S.Ct. at p. 2580].)
 

 III
 

 We turn to the decision of the Court of Appeal, which affirmed the judgment of the superior court, as modified.
 

 After consideration, we are of the opinion that the Court of Appeal was right to reject Rells’s claim that the superior court erred in presumably conducting the hearing on his recovery of mental competence under Penal Code section 1372 in conformity with the holding of the
 
 Mixon
 
 majority.
 

 At the threshold, the Court of Appeal was right to subject the holding of the
 
 Mixon
 
 majority, as it evidently did, to independent review. The holding amounted to the resolution of a pure question of law. The resolution of such a question is examined de novo. (See, e.g.,
 
 People
 
 v.
 
 Alvarez
 
 (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].)
 

 On the merits, the Court of Appeal was right to conclude that the holding of the
 
 Mixon
 
 majority was sound. The holding, as we have explained, is in accord with our own conclusion in the premises. Rells complains, specifically, of the superior court’s presumed imposition on him of
 
 *871
 
 the burden of proof of his own mental incompetence. By submitting the question of his recovery of mental competence on the certificate of restoration to mental competence filed by the acting medical director of Patton State Hospital and the accompanying report, he must be understood
 
 either
 
 to have claimed that he was mentally incompetent, in which case the burden of proof properly rested on his shoulders,
 
 or
 
 to have claimed that he was mentally competent, in which case the burden of proof did not come into play at all.
 
 [5]
 
 In neither case does error appear.
 

 IV
 

 For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.
 

 It is so ordered.
 

 George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 On May 24, 2000, the opinion was modified to read as printed above.
 

 [1]
 

 People
 
 v.
 
 Bye
 
 (1981) 116 Cal.App.3d 569, 573 [172 Cal.Rptr. 186]. See also California Judges Benchbook: Criminal Proceedings (CJER 1999 supp.) section 3.9, page 147 (implying that when it is the defendant who “seek[s] a finding of [mental] incompetence,” it is he who bears the burden of proof thereon).
 

 [2]
 

 See
 
 People
 
 v.
 
 Bye, supra,
 
 116 Cal.App.3d at page 573. See also California Judges Benchbook: Criminal Proceedings,
 
 supra,
 
 section 3.9, page 147 (implying that, in any given action, it may be the People, and not the defendant, who “seek[] a finding of [mental] incompetence,” and who thereby bear the burden of proof thereon).
 

 [3]
 

 Evidence Code section 500 provides that, generally, “a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.”
 

 [4]
 

 We observe that, if mental incompetence were to be characterized as either a “claim for
 
 relief’
 
 on the part of a defendant (Evid. Code, § 500) or a “defense” at his disposal
 
 (ibid;
 
 accord,
 
 Pate v. Robinson
 
 (1966) 383 U.S. 375, 384 [86 S.Ct. 836, 841, 15 L.Ed.2d 815]), Evidence Code section 500, as a general matter at least, would impose the burden of proof on
 
 *869
 
 the defendant himself rather than the People. (See
 
 ante,
 
 at p. 868, fn. 3.) That provision, it is true, does not prohibit the shifting of the burden based on “factors” including the “knowledge of the parties concerning the particular fact” implicated therein, the “availability of the evidence to the parties,” the “most desirable result in terms of public policy in the absence of proof of the particular fact,” and the “probability of the existence or nonexistence of the fact” (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 89). To our mind, and contrary to the view expressed by the
 
 Mixon
 
 dissenter, such factors do not compel the shifting of the burden here.
 

 [5]
 

 The People have not contended that, by submitting the question of his recovery of mental competence as he did, Rells failed to preserve his claim of error. Hence, we need not, and do not, address the issue.