Filed 11/21/25  P. v. Preciado CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F088200 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. VCF281317) |
| JACOB PRECIADO, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

William P. Daly for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

In 2022 in *Preciado II*,[1] we remanded this matter for resentencing under Senate Bill No. 567,[2] given defendant and appellant Jacob Preciado's potential eligibility for lower term sentences based on his age at the time of the crimes.  (Pen. Code, § 1170, subd. (b)(6)(B).)[3]  On remand, defendant was declared mentally incompetent.  (§ 1370, subd. (a)(1)(B).)  This appeal follows the trial court's finding that his mental competency was restored and its reimposition of middle-term sentences.  (§§ 1372, subd. (a)(1), 1170, subd. (b).)  He claims that restoration of his mental competency should have been evaluated under California's more stringent standard rather than under the federal *Dusky* standard and that the trial court erred in imposing middle terms based on aggravating factors not admitted or found true beyond a reasonable doubt.  (*Dusky v. United States* (1960) 362 U.S. 402 (*per curiam*) (*Dusky*).)

We affirm the judgment.

## PROCEDURAL BACKGROUND

### I.  *Preciado I*

In 2017, defendant was convicted of two counts of committing a lewd or lascivious act against a child under the age of 14 years (§ 288, subd. (a)), and the jury found true the special allegation that defendant had "substantial sexual conduct with a victim who is under 14 years of age" (§ 1203.066, subd. (a)(8)).  The trial court sentenced defendant to the middle term of six years on count 2 and a concurrent middle term of six years on count 1.  Defendant appealed.

Defendant advanced seven claims.  He argued that the alternative diagnostic evaluation proposed by the trial court pursuant to sections 1203.03, subdivision (a), and

---

[1]    We take judicial notice of our prior nonpublished opinions in *People v. Preciado* (July 27, 2020, F076863) (*Preciado I*) and *People v. Preciado* (Aug. 3, 2022, F083190) (*Preciado II*). (Evid. Code, §§ 452, subd. (d), 459.)

[2]    Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).

[3]    All further statutory references are to the Penal Code unless otherwise specified.

2.

1203.067, subdivision (a)(1), violated his right to equal protection under federal and state law; and he requested remand for a hearing on his eligibility for mental health diversion under section 1001.36. He also argued that the trial court abused its discretion in permitting the prosecutor to amend the information to conform to proof at trial; his conviction on count 1 was unsupported by substantial evidence of sexually motivated intent; and the trial court erred in instructing the jury on "'[s]ubstantial sexual conduct'" under section 1203.066, subdivision (b), requiring reversal per se. Lastly, defendant argued that the trial court erred in denying his motion for a new trial on the ground of ineffective assistance of counsel and in failing to stay his sentence on count 1 under section 654.

The People conceded that in light of the California Supreme Court's then-recent decision in *Frahs*, defendant was entitled to a conditional, limited remand under section 1001.36. (*People v. Frahs* (2020) 9 Cal.5th 618, 624–625 (*Frahs*).) As to defendant's other claims, the People contended no reversible errors occurred.

We rejected all of defendant's claims in *Preciado I* except for his request for remand under section 1001.36, which we granted given the decision in *Frahs*. (*Frahs, supra*, 9 Cal.5th at pp. 624–625.) After our opinion was issued, the People filed a petition for rehearing seeking to advance a new argument not raised in briefing or during oral argument: defendant's categorical ineligibility for diversion under the statute as amended. We denied the petition for rehearing.

On remand, the trial court denied defendant's request for diversion, concluding that pursuant to section 1001.36, former subdivision (b)(2)(D) (now § 1001.36, subd. (d)(4)), defendant was categorically ineligible based on his conviction offense.

## II. *Preciado II*

Defendant appealed. He claimed the trial court erred, and he was entitled both to a diversion hearing under the terms of our remand order and to application of section 1001.36 as originally enacted. The People disputed entitlement to relief.

3.

We rejected defendant's arguments of error in *Preciado II* and affirmed the trial court's ruling, which reinstated defendant's conviction. However, we sought supplemental briefing on Senate Bill 567 and remanded the matter for resentencing given defendant's eligibility to seek the lower term based on his age, which created a presumption in favor of the lower term if it "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(B).)

## III. *Preciado III*

In March 2023, at the sentencing hearing following remand, defendant's counsel raised an issue as to defendant's competency, and the trial court suspended proceedings and referred the matter for mental health evaluation.[4] (§§ 1368–1370; *Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 493 (*Rodriguez*).) Subsequently, Dr. Rassti, a psychologist, submitted a report in May 2023 finding defendant presently unable to understand the nature of the proceedings against him or assist counsel and, in June 2023, the trial court committed defendant to the custody of the Department of State Hospitals for treatment with an order authorizing involuntary administration of medication.

In July 2023, defendant was enrolled in early access and stabilization services and placed in the jail based competency treatment (JBCT) program.

In October 2023, the director of the Tulare County JBCT program filed a certificate of restoration of mental competency, and the court held an evidentiary hearing in May 2024. (§ 1372; *Rodriguez, supra*, 15 Cal.5th at pp. 493–495.) Dr. Morton, a psychiatrist who had treated defendant for approximately 15 years, testified on his behalf. Dr. Morton evaluated defendant using the "Mini Mental Status Exam" (MMSE) and testified defendant "was clearly much more impaired than he had ever presented." Dr. Morton did not think defendant would be able to sit in court and follow testimony;

---

[4]     Because defendant's claim on appeal relates to the applicable legal standard rather than to the evidence or the trial court's ruling, we need only briefly summarize the proceedings and evidence.

comment on testimony or ask his attorney specific questions about the testimony; see, hear, or evaluate evidence; or communicate with counsel concerning the evidence.

Dr. Orantes, the clinical psychologist who evaluated defendant in the JBCT program and concluded defendant's competency had been restored, also testified. He stated that schizophrenia, the condition with which defendant was diagnosed, does not preclude competency in criminal proceedings. He testified he evaluated defendant using the ECST-R (evaluation for competency to stand trial), which he described as a "gold standard" for assessing competency that is "reliable, consistent, [and] admissible in court." He explained the MMSE, used by Dr. Morton, is a screening tool for assessing cognitive capacity, it is a completely different instrument than the ESCT-R so it does not compare, and he would not use the MMSE alone to determine competency. He also testified the ESCT-R is designed to assess competency within the meaning of *Dusky*.

The trial court concluded that defendant did not meet his burden of demonstrating incompetence, accepted the certificate of restoration of competency, and set a sentencing hearing. (*Rodriguez, supra*, 15 Cal.5th at p. 495 [§§ 1369, 1372].)

In June 2024, the trial court resentenced defendant to the middle term of six years on count 2 and a concurrent middle term of six years on count 1.

Defendant appealed and advances two claims. First, he argues that the competency finding was based on *Dusky*'s "'ability to consult'" standard (*Dusky, supra*, 362 U.S. at p. 402), rather than the more stringent "ability to assist" standard under California law (§ 1367, subd. (a)), requiring reversal for further proceedings. Second, he argues that given his age and mental illness diagnosis, the trial court erred in selecting the middle term based on aggravating factors that were neither pleaded nor proven beyond a reasonable doubt. (§ 1170, subd. (b)(6); see *People v. Lynch* (2024) 16 Cal.5th 730, 757 (*Lynch*) ["Excluding properly proven prior convictions or a defense stipulation, a jury finding is now required for all facts actually relied on to impose an upper term."].)

The People respond that the competency standards under *Dusky* and section 1367 use different terms, but are essentially identical, and that the right to a jury determination on aggravating factors does not apply to selecting the middle term over the lower term and the court did not abuse its discretion in selecting the middle term.

Defendant did not file a reply.

As explained herein, we deny defendant's request for judicial notice of documents relating to Assembly Bill No. 1529 (1973–1974 Reg. Sess.), find no reversible errors, and affirm the judgment.[5]

## DISCUSSION

### I.  Restoration of Competency

#### A.  Legal Principles

"The due process guarantees of both the federal and state Constitutions forbid the trial of a criminal defendant while he or she is mentally incompetent." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 385 (*Buenrostro*), citing *People v. Mickel* (2016) 2 Cal.5th 181, 194–195.)  "As a matter of due process, '[a] defendant may not be put to trial unless he "'has sufficient present ability *to consult* with his lawyer with a reasonable degree of rational understanding … [and] a rational as well as factual understanding of the proceedings against him.'"'" (*Buenrostro, supra*, at p. 386, italics added, quoting *Cooper v. Oklahoma* (1996) 517 U.S. 348, 354 [quoting *Dusky, supra*, 362 U.S. at p. 402].)  "A trial court's failure 'to employ procedures to protect against trial of an incompetent defendant deprives him of his due process right to a fair trial and requires

---

[5]  The failure to object in the trial court generally forfeits review of the claim on appeal and this principle applies to both federal and state claims of error. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.)  There are exceptions to this general rule, however, and courts have the discretion to consider an issue notwithstanding the failure to object. (*McCullough, supra*, at p. 593; *Sheena K., supra*, at pp. 887–888, fn. 7.)  Here, neither party addressed defendant's failure to object in the trial court on the grounds he now advances on appeal, but we will exercise our discretion to consider, and reject, defendant's claims on their merits notwithstanding his failure to object.

6.

reversal of his conviction.'" (*Buenrostro, supra*, at p. 386, quoting *People v. Medina* (1990) 51 Cal.3d 870, 881–882 [citing *Drope v. Missouri* (1975) 420 U.S. 162, 171].)

"In California, the determination whether a criminal defendant is competent to stand trial is governed by … section 1367…, which provides that a defendant is mentally incompetent 'if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or *to assist* counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a).)" (*Buenrostro, supra*, 6 Cal.5th at p. 385, italics added.) "The law presumes a person is competent to stand trial. (Pen. Code, § 1369, subd. (f).) 'When the defendant puts his or her competence to stand trial in issue, the defendant bears the burden of proving by a preponderance of the evidence that he or she lacks competence.'" (*Id.* at p. 387, quoting *People v. Mendoza* (2016) 62 Cal.4th 856, 871; accord, *Rodriguez, supra*, 15 Cal.5th at p. 495.) "[W]hen[, as in this case,] a defendant returns to court after a certificate of restoration has been filed, the defendant is presumed competent and bears the burden of proving otherwise at a hearing." (*Rodriguez, supra*, at p. 495, citing *People v. Rells* (2000) 22 Cal.4th 860, 867–868.)

## B.     Analysis

Defendant's challenge to the finding his competency had been restored rests on the asserted distinction between *Dusky*'s "'ability to consult'" standard (*Dusky, supra*, 362 U.S. at p. 402), and California's "ability to assist" standard (§ 1367, subd. (a)), which he contends is more stringent. However, the California Supreme Court has stated, "'The applicable state statutes essentially parallel the state and federal constitutional directives.'" (*Buenrostro, supra*, 6 Cal.5th at p. 386, quoting *People v. Lightsey* (2012) 54 Cal.4th 668, 691.) Although the two standards "'"do[] not match, word for word"'" (*Buenrostro, supra*, at p. 390, quoting *People v. Jablonski* (2006) 37 Cal.4th 774, 808 (*Jablonski*)), "'"'[t]o anyone but a hairsplitting semanticist, the two tests are identical'"'" (*Buenrostro, supra*, at p. 390, quoting *Jablonski, supra*, at p. 808). We recognize

defendant is arguing that California's statutory standard is more demanding than the *Dusky* federal constitutional standard and, in contrast, the defendant in *Jablonski* argued the state standard fell short of the federal standard, but the high court has rejected the argument that there is any meaningful difference between the constitutional and state statutory standards.  (*Jablonski, supra*, at p. 808; accord, *Buenrostro, supra*, at p. 386.)[6]

"'Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction.  It is not their function to attempt to overrule decisions of a higher court.'"  (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197–198, quoting *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Therefore, we adhere to the California Supreme Court's decisions on the matter and decline defendant's invitation to reopen what we view as a long settled principle.  Defendant's requests for judicial notice of documents relating to Assembly Bill No. 1529 (1973–1974 Reg. Sess.) and for remand for further proceedings are denied.

## II.     Selection of Middle Term

### A.     Legal Principles

#### 1.     Senate Bill 567's Amendment of Section 1170

"The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment's due process clause, 'provides that those "accused" of a "crime" have the right to a trial "by an impartial jury."  This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury

---

[6]     In *Jablonski*, the defendant claimed, "[A] person who 'is able *to assist* an attorney in conducting his defense in a rational manner' does not necessarily have 'sufficient present ability *to consult* with his lawyer with a reasonable degree of rational understanding' as required by *Dusky*."  (*Jablonski, supra*, 37 Cal.4th  at p. 808.)  In *Buenrostro*, the defendant advanced a different challenge, claiming that section 1367's requirement of a mental disorder or developmental disability (*Buenrostro, supra*, 6 Cal.5th at p. 387), and the omission of "the requirements of 'a rational as well as factual' understanding of the proceedings and a 'present' ability to rationally assist counsel" from section 1367 and CALJIC No. 4.10 failed to satisfy the constitutional standard.  (*Buenrostro, supra*, at p. 390.)

beyond a reasonable doubt.' (*Alleyne v. United States* (2013) 570 U.S. 99, 104 (*Alleyne*), quoting U.S. Const., 6th Amend.; accord, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 476 (*Apprendi*).)  In the context of California's determinate sentencing scheme, *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) held that, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' (*Id.* at p. 281.)  'Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury.'" (*Lynch, supra*, 16 Cal.5th at p. 742, quoting *Erlinger v. United States* (2024) 602 U.S. 821, 830 (*Erlinger*) & citing *Ramos v. Louisiana* (2020) 590 U.S. 83, 90, 92–93.)

Effective January 1, 2022, Senate Bill 567 amended section 1170, codifying the holding in *Cunningham*.  (*Lynch, supra*, 16 Cal.5th at p. 757.)  As amended, section 1170, subdivision (b), provides, in relevant part:

"(1)    When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court *shall, in its sound discretion, order imposition of a sentence not to exceed the middle term*, except as otherwise provided in paragraph (2).

"(2)    The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.  Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements.  The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

9.

"(3)    Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.  This paragraph does not apply to enhancements imposed on prior convictions."  (§ 1170, subd. (b)(1)–(3), italics added.)

"(6)    Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, *the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense*:

"(A)    The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

"(B)    The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

"(C)    Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking.

"(7)    Paragraph (6) does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present."
(§ 1170, subd. (b)(6)–(7), italics added.)

### 2.    Decisions in *Lynch* and *Wiley*

Prior to the California Supreme Court's decision in *Lynch*, appellate courts agreed that Senate Bill 567 applied retroactively (*Lynch, supra*, 16 Cal.5th at p. 749), but they disagreed on how to characterize the error and assess prejudice in the context of sentencings that occurred prior to the legislative change (*id.* at pp. 756–757), including whether the change in the law altered the scope of the trial court's sentencing discretion, implicating the standard articulated in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*) (*Lynch, supra*, at p. 772).  In a divided opinion, the majority in *Lynch* held,

10.

"Excluding properly proven prior convictions or a defense stipulation, a jury finding is now required for all facts actually relied on to impose an upper term" (*id.* at p. 757), and "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established.  The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements.  If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing" (*id.* at p. 768).

Further, the court held, "The current statute narrows [the trial court's sentencing] authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified.  These changes circumscribe the trial court's previously broad discretion to select whichever of the three terms of imprisonment serves the interests of justice.  As a result, the *Gutierrez* standard applies to sentences imposed before the statute's 2022 amendment, or when the record otherwise indicates that the court has not exercised its ""'informed discretion.'""" (*Lynch, supra*, 16 Cal.5th at p. 773, quoting *Gutierrez, supra*, 58 Cal.4th at p. 1391.)

More recently, in an opinion that postdated the briefing in this case, the California Supreme Court addressed the scope of the prior conviction exception in light of the United States Supreme Court's decision in *Erlinger*.  The court stated, "We understand *Erlinger* to require that any fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial.  This jury trial guarantee retains its vitality even if the inquiry is ""'straightforward.'"" (*Erlinger, supra*, 602 U.S. at p. 842.)  'There is no efficiency exception to the Fifth and Sixth Amendments.' (*Ibid.*)

11.

Only when aggravating facts have been proven as the Constitution requires may the court then rely on them to conclude, in its discretion, that those facts justify an upper term." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1083–1084.)

### B.  Analysis

The issue raised in this appeal is whether the aforementioned principles apply when the trial court selects the presumptive middle term rather than the lower term. Defendant was 20 years old at the time of the crimes and he has a long, documented history of mental illness, including a finding of mental incompetence during a period preceding the sentencing hearing.  (§ 1170, subd. (b)(6)(B); Cal. Rules of Court, rule 4.423(b)(2), (4), (6).)[7]  At the sentencing hearing, defense counsel argued for the lower terms while the prosecutor argued for the middle terms.

In mitigation, the trial court found defendant had no prior criminal record and was under the age of 26 years, but gave no weight to his mental condition because there was no showing his mental condition was connected to the commission of the crimes. (Rule 4.423(b)(1), (4), (6).)  In aggravation, the court found the following five factors: "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; "[t]he victim was particularly vulnerable" based on age; "[t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed"; "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism"; and, as the victim's cousin, "[t]he defendant took advantage of a position of trust or confidence to commit the offense."  (Rule 4.421(a)(1), (3), (7), (8), (11).)  The court concluded the aggravating factors outweighed the mitigating factors and imposition of the lower term was contrary to the interests of justice.  (§ 1170, subd. (b)(6).)

---

**7**      All further reference to rules are to the California Rules of Court.

Defendant argues that the trial court erred in relying on aggravating factors not admitted or proved true beyond a reasonable doubt to impose the middle term on counts 1 and 2. However, defendant does not cite any authority in support of his position and appellate courts to consider this argument have rejected it. (*People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1226; *People v. Hilburn* (2023) 93 Cal.App.5th 189, 204–205 (*Hilburn*); *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929.) As *Hilburn* explained, "First, the language and framework of the amended law makes clear the Legislature intended to maintain the sentencing court's discretion to impose the middle term even if it finds the defendant falls within one of the three categories of section 1170, subdivision (b)(6). As the Attorney General points out, if the Legislature wanted to limit the sentencing court's discretion, it knew how to do so as set forth in [section 1170,] subdivisions (b)(1) and (2). (See *People v. Bautista-Castanon*[*, supra,*] [at p.] 929 [holding § 1170, subd.(b)(6) does not require aggravating circumstances to be proven to jury beyond a reasonable doubt and declining 'to import [the subdivision (b)(1) and (2)] requirement into section 1170, subdivision (b)(6) as a prerequisite to imposing the middle term'].)

"Second, the imposition of the low term becomes presumptive only after the sentencing court makes findings in addition to those supporting the jury's verdict. Under the amended statute, the low term is presumed only if the sentencing court first finds the defendant falls into one of the three special categories set forth in section 1170, subdivision (b)(6) and, second, finds that circumstance was a contributing factor in the commission of the offense. Thus, unlike the middle term, the lower term is presumed only after the court makes additional findings beyond those of the jury. Because those findings occur after the defendant is convicted, and are not necessary for imposition of the presumptive middle term, they do not create a new statutory maximum sentence. Accordingly, the Attorney General correctly asserts that the new law does not implicate the concerns of *Apprendi*, which precludes only *increased* punishment based on facts not

found by the jury. (See *Rita v. United States* (2007) 551 U.S. 338 ['The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede).]'.) Stated another way, because the low term becomes presumptive only after additional factfinding by the judge, it does not constitute the 'statutory maximum' for purposes of *Apprendi*." (*Hilburn, supra*, 93 Cal.App.5th at pp. 204–205.)

Thus, "All that was required of the court in selecting the middle term was '[to] set forth on the record the facts and reasons for choosing the sentence imposed' 'at the time of sentencing' .…" (*People v. Sarmiento-Zuniga, supra*, 108 Cal.App.5th at p. 1226, quoting § 1170, subds. (b)(5), (c); see rule 4.420(d) ["In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing."].) In this case, the trial court's selection and imposition of the middle term comported with the law and we reject defendant's claim of error.

## DISPOSITION

The judgment is affirmed.