Filed 1/22/26  P. v. Bennett CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C103063 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CR20212111, CR20230488, CR20241951) |
| v. | |
| DAVID BENNETT, | |
| Defendant and Appellant. | |

After the State Department of State Hospitals (DSH) filed a certificate of mental competence with the trial court pursuant to Penal Code section 1372,[1] the trial court rejected the certificate and found defendant had not been restored to competency.  On appeal, defendant claims insufficient evidence supports the trial court's finding he was not competent to stand trial.  We shall affirm.

---

[1]    Further undesignated statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

The People previously charged defendant in three separate cases, and defendant is currently committed to the DSH. We need not detail the underlying facts of defendant's alleged criminal conduct as they are not relevant to the issue on appeal.

In June 2024, the trial court found defendant not competent to stand trial, suspended criminal proceedings, and committed defendant to DSH for competency restoration. In September 2024, the medical director of the state hospital where defendant was receiving treatment submitted a certificate of mental competence to the trial court pursuant to section 1372.

DSH also filed a competency report completed by Dr. Felix Sanchez. Dr. Sanchez's report detailed that defendant endorsed consistent paranoid delusions that the FBI and the government were "conspiring against him," that his case was resolved and he should be released, and that a DSH staff psychologist was trying to kill him. The report also indicated that defendant adhered to his prescribed medication and continued to make improvement in his overall psychiatric stability. On September 11, 2024, a staff psychologist noted defendant "presented as 'clear and denied any delusions associated with the FBI,' " and discussed his legal strategy without any delusional ideation.

On September 12, 2024, Dr. Sanchez met with defendant for a 90-minute interview. During the interview defendant reported he had no symptoms of psychosis, depression, or anxiety. Dr. Sanchez reported that defendant's expressed emotions appeared to be stable, his stream of thought was within normal parameters, and he was cooperative during the interview. Defendant demonstrated an adequate factual understanding of the criminal proceedings, an appreciation for the seriousness of the charges, and a rational reason to enter a plea agreement. Dr. Sanchez emphasized that during the interview defendant no longer endorsed "paranoid/grandiose delusions related to his case, diminished expression of emotion, thought blocking, grossly disorganized behavior, and irritability." Dr. Sanchez also reported defendant demonstrated adequate

2

rational ability to assist counsel in the conduct of a defense. Defendant understood how to manage disagreement with his attorney through compromise and communication.

At the competency restoration hearing, defense counsel did not submit on Dr. Sanchez's report but declared a doubt as to defendant's competence and requested another competency report. The trial court appointed Dr. Luciano Tristan to conduct an evaluation and prepare a written report pursuant to section 1372, subdivision (c)(2).

Dr. Tristan submitted a report on October 22, 2024, that found defendant was not competent to stand trial. In preparing his report, Dr. Tristan did not interview defendant largely because defendant refused to participate in the evaluation. Dr. Tristan based his evaluation on his review of the charging and commitment documents, data gathered by defense counsel, a previous competency evaluation (§ 1368), and police reports from each pending case. On October 21, 2024, defense counsel shared with Dr. Tristan that in September 2024 defendant could not communicate rationally and calmy with him because of thought disturbances and emotional dysregulation related to delusional preoccupations with "malicious plots and persecution involving counsel and law enforcement, human-trafficking, and other themes unrelated to the actual elements of the legal cases against him." Counsel indicated that defendant's presentation and approach to interacting with him had not changed significantly since September 2024. Dr. Tristan opined defendant remained "psychotic and possibly emotionally dysregulated."

Based on his review of a previous psychiatric evaluation in the case, Dr. Tristan found defendant had a significant clinical history and related treatment since at least 2018 and that defendant remained symptomatic. His documented symptoms since that time included "auditory hallucinations, ideas of reference, incomprehensible speech, paranoid delusions, guardedness, agitation, suicidality, depression, catatonia, noncompliance, and poor self-care." Further, the police reports from defendant's pending cases included statements from defendant consistent with paranoid delusions, including statements that he was subjected to "medical experiments" while in jail.

3

Dr. Tristan's report concluded that defendant presently did not understand the nature and purpose of the proceedings against him and was not able to cooperate in a rational manner with counsel in presenting a defense or able to prepare and conduct his own defense due to his mental disorder.

The trial court held a competency restoration hearing. Brandi Halsted, a licensed clinical social worker, defendant, and Dr. Sanchez testified. Halsted testified that her agency had tried to meet with defendant over ten times during his commitment and she characterized her interactions with defendant as challenging because he would be guarded, paranoid, and verbally aggressive. She diagnosed defendant with schizoaffective disorder based on defendant's delusions, paranoia, psychosis, and disorganization. In late September 2024, Halsted had concerns about defendant's competency to stand trial.

During defendant's testimony, he claimed he was competent. He understood that he had three cases pending against him and generally described the charges against him. Defendant stated there was exculpatory evidence related to the charge that he assaulted a police officer which he needed to present in his defense.

Defendant testified that his counsel declaring a doubt about his competency affected his Sixth Amendment right to counsel. He also said that the role of a judge in a criminal proceeding was "for a doctor to determine" and that a witness's role was "for me to go to State Hospital and get a doctor's opinion" and that an adverse witness means his attorney is against him twice. He understood the jury's role was to determine a defendant's guilt or innocence and that the prosecution was "against" him and defense counsel was "for" him. Defendant testified that it is always right to be respectful to his attorney and that it is important "to be respectful of the [court] when in court." However, the trial court repeatedly warned defendant during the hearing that he may be removed if he continued to interrupt the proceeding.

4

Dr. Sanchez testified that defendant was calm, cooperative, and did not present any symptoms when he interviewed him and that he did not observe any evidence of delusions or cognitive impairment. He found defendant generally understood the charges against him, the strategy for the case, and that he expressed trust in his attorney. Dr. Sanchez opined defendant was competent based on his interview and evaluation, and he further explained a person may harbor a delusion and still be competent.

Dr. Sanchez testified that defendant did not express any beliefs regarding the FBI during his evaluation. On cross-examination, Dr. Sanchez conceded that if a person fixated on a delusion to the point that they talked over a judge or attorney in court, that delusion could affect their ability to be competent to stand trial. He agreed that if a person routinely expressed a fixed delusion that the FBI was conspiring against him to the extent that they interrupted court personnel, could not focus on the charges, or were unable to work with their attorney, it could be an indication they were not competent to stand trial. He acknowledged that defendant presented significantly different in his evaluation than he did at the hearing and that he "definitely would have concerns" about defendant's competency but that he would defer to having an examination before rendering a definitive opinion on competency.

Defendant objected and requested to cross-examine Dr. Sanchez. Based on his observations in court, hearing transcripts, and Dr. Sanchez's testimony, the prosecutor declared a doubt as to defendant's competency. The trial court found, based on the evidence and Dr. Tristan's report, that defendant remained incompetent to stand trial under section 1372.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues substantial evidence does not support the trial court's finding he was not competent to stand trial.

5

"Penal Code section 1372 provides that, '[i]f' the specified mental health official 'determines that the defendant has regained mental competence,' he 'shall . . . fil[e] a certificate of restoration' thereto. (§ 1372, subd. (a)(1).) It also provides that the defendant must then be 'returned to . . . court' 'for further proceedings.' [Citation.] It further provides that the 'court shall notify' one of certain specified mental health officials, 'as appropriate, of the date of any hearing on the defendant's [mental] competence and whether or not the defendant was found by the court to have recovered [mental] competence.' [Citation.] It does not, however, set forth procedures for a hearing on the defendant's recovery of mental competence identical to those for a trial of his mental competence in the first place. Indeed, it does not set forth any such procedures whatsoever." (*People v. Rells* (2000) 22 Cal.4th 860, 866-867.)

Section 1369 expressly states that a defendant is presumed mentally competent unless it is proven by a preponderance of the evidence that defendant is mentally incompetent. (§ 1369, subd. (c)(3).) Section 1372 impliedly incorporates section 1369's preponderance of the evidence burden of proof, which is applicable at a hearing to recover defendant's mental competence. (*People v. Rells, supra*, 22 Cal.4th at pp. 867-868.)

While section 1372 explicitly requires the trial court to rely on a written medical report to reject a certificate of competence, a court can also rely on other evidence in addition to the report because section 1372 incorporates section 1369's burden of proof. (*People v. Rells, supra*, 22 Cal.4th at p. 867; *People v. Lawley* (2002) 27 Cal.4th 102, 136 ["A trial court may appropriately take into account its own observations in determining whether the defendant's mental state has significantly changed during the course of trial" at a section 1369 hearing]; *McKneely v. Superior Court* (2023) 91 Cal.App.5th 1232, 1244 ["Nothing in [section 1372] bars lay testimony, including testimony from defense counsel, at a hearing at which a certificate of restoration is contested. The statute only prevents the court from relying solely on nonexpert testimony in rejecting a certificate"].)

6

Here, there is substantial evidence to support the trial court's finding that defendant remained incompetent, including Dr. Tristan's report, the testimony of Dr. Sanchez and Halsted, and the trial court's observations of defendant's delusions and in-court behavior.

Defendant contends the trial court should have given less weight to Dr. Tristan's report because Dr. Tristan did not personally interview defendant. But under section 1372, subdivision (c)(2), there is no such requirement. The trial court was only required to base its rejection of the certificate of restoration on a written report, which it did. (§ 1372, subd. (c)(2).) The conclusions in Dr. Tristan's report that defendant did not understand the nature and purpose of the proceedings against him, was not able to cooperate in a rational manner with counsel in presenting a defense, or prepare and conduct his own defense was supported by the charging and commitment documents, data gathered by defense counsel, a previous competency evaluation (§ 1368), and police reports from each pending case.

Defendant further argues, relying on Dr. Sanchez's report, that he understood the proceedings and was able to assist counsel. In effect, defendant is asking us to weigh the evidence differently than the trial court. This is beyond our purview where, as here, we are reviewing the trial court's competency finding for substantial evidence. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215 [" 'We do not reweigh evidence or reevaluate a witness's credibility' "].)

Substantial evidence supports the trial court's finding that defendant's competency was not restored.

DISPOSITION

The order rejecting restoration of competency is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
EARL, P. J.

/s/
MAURO, J.

---

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.